**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SUSAN KEITH, ) | |
|       Plaintiff, ) | |
| ) | |
|   v. ) | Civil Action No. |
| ) | CIVIL COMPLAINT |
| BRETT E.J. GORMAN, ) | |
| TED C. STRICKLAND, JR., and ) | |
| MATTHEW BOULDIN, ) | |
| in his individual and official capacity ) | |
| as OPRA record CUSTODIAN at Princeton ) | |
| Public Schools, ) | |
|       Defendants. ) | |
| _____ ) | |

**FEDERAL CIVIL RIGHTS COMPLAINT**
**IN**
**VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983**
**CONSPIRACY TO VIOLATE CIVIL RIGHTS UNDER 42 U.S.C. § 1983**
**VIOLATION OF NEW JERSEY OPEN PUBLIC RECORDS ACT**
**FALSIFYING AN OFFICIAL GOVERNMENT RECORD**
**FIRST AMENDMENT RETALIATION (42 U.S.C. § 1983)**
**VIOLATION OF EQUAL PROTECTION UNDER THE FOURTEENTH**
**AMENDMENT (42 U.S.C. § 1983)**

Plaintiff Susan Keith ("Plaintiff"), by and through her complaint against Defendant Brett E.J. Gorman ("Gorman" or "Defendants"), Defendant Ted C. "Teddy" Strickland, Jr., ("Strickland" or "Defendants"), and Matthew Bouldin ("Bouldin" or "Defendants"), alleges:

**INTRODUCTION**

1. This civil action is brought pursuant to 42 U.S.C. § 1983 for violations of Plaintiff's constitutional rights under the First, Fifth, and Fourteenth Amendments to the United States Constitution.

2. Defendants, in tandem with Princeton Public Schools officials, have consistently chosen obstruction over what could have been a straightforward resolution months ago.

1

3. These violations arise from three coordinated actions by Defendants: (1) systematic misrepresentation of legal counsel through Defendants Gorman and Strickland acting in concert with government official Defendant Bouldin; (2) deliberate falsification of an official government record of video surveillance evidence obtained through a New Jersey Open Public Records Act (OPRA) request, including unauthorized deletion and reframing of a criminal offense captured on surveillance; and (3) retaliatory actions against Plaintiff after she exposed this illegal conduct, including threatening communications sent on April 25, 2025.

4. Defendant Bouldin, who is resigning from Princeton Public Schools on June 30, 2025, falsified an official government record—an act constituting criminal misconduct under N.J.S.A. 2C:28-7, as documented in Princeton Police Report #25-11101.

5. This matter presents extraordinary circumstances warranting immediate federal intervention before the imminent departure of Defendant Bouldin to preserve evidence.

6. The technical evidence of tampering, specifically green frames at timestamps 1:31-1:32 showing unauthorized splicing of video surveillance footage to conceal a criminal offense, conclusively demonstrates that the video was deliberately manipulated beyond legitimate redaction by Defendant Bouldin.

7. Defendants Gorman and Strickland established their roles as state actors through willful participation in joint activity with Defendant Bouldin, a state employee.

8. Defendant Strickland's review of the original video on February 19, 2025, followed by approval of its falsification and subsequent creation of an artificial legal representation structure, demonstrates the kind of entwinement with state action that creates

constitutional liability under *Manhattan Community Access Corp. v. Halleck, 139 S. Ct. 1921 (2019)*.

9. These coordinated acts constitute a deliberate scheme to deprive Plaintiff of constitutional rights through manipulation of official government records and misrepresentation of legal counsel, fundamentally undermining both the integrity of judicial processes and the public's right to transparent government records.

**JUSTICIABILITY**

10. By including this section, Plaintiff preemptively pull apart Defendants' anticipated procedural escape routes—their preferred mechanism for avoiding substantive examination of misconduct within Princeton Public Schools, a public, federally funded institution directly accountable to taxpayers whose precious resources fund these educational operations, funds the attorneys who are monetizing procedural obstruction, and who are bound by transparency protocols that they attempt to disregard.

11. Plaintiff realizes that her case now extends beyond her individual dispute, exposing systemic institutional obstruction at Princeton Public Schools, underwritten by taxpayer dollars, transcending personal injury and unfairness, to address critical public interest and institutional transparency, aiming to protect the rights of all employees, irrespective of their employment status.

12. Plaintiff has standing to bring these claims based on three distinct injuries directly caused by Defendants' actions: (1) procedural injury through denial, then delay, then denial of access to unaltered video evidence critical to her legal claims (*FEC v. Akins*, 524 U.S. 11 (1998)); (2) substantive injury through intimidation tactics and retaliatory threats targeting her for exposing official misconduct (*Lexmark Int'l, Inc. v. Static Control*

*Components, Inc.*, 572 U.S. 118 (2014)); and (3) psychological injuries resulting from viewing the deliberately falsified evidence that silenced her account through deletion.

13. Plaintiff, a former systems engineer and international technical project manager, conducted technical analysis of the falsified video which revealed conclusive evidence of tampering—including green frames at timestamps 1:31-1:32 proving unauthorized splicing—establishing a direct causal connection between Defendants' actions and Plaintiff's injuries as documented in Princeton Police Report #25-11101.

14. These claims are ripe for adjudication as the constitutional harms have already occurred, Plaintiff currently suffers ongoing injury from the falsified official government record, and delayed resolution would compound these harms by allowing continued use of falsified evidence in pending proceedings (*Abbott Laboratories v. Gardner*, 387 U.S. 136 (1967)).

15. This case cannot be rendered moot by subsequent production of the original video or correction of representation, as these actions would fall within the "voluntary cessation" exception (*Friends of the Earth, Inc. v. Laidlaw Environmental Services*, 528 U.S. 167 (2000)), which prevents defendants from evading judicial review by temporarily altering questionable behavior.

**CAUSATION**

16. Each Defendant's actions form a direct causal link resulting in constitutional injuries to Plaintiff.

17. Defendant Bouldin directly caused injury by: (1) initially denying Plaintiff's legitimate OPRA request submitted on September 28, 2024; (2) providing access to the same video to others while denying it to Plaintiff; and (3) deliberately falsifying the video before

4

providing it to Plaintiff on April 7, 2025 after Plaintiff submitted another OPRA request after billing records (OPRA request) revealed Defendant Strickland had viewed the video.

18. Defendant Strickland caused injury by: (1) reviewing the original video on February 19, 2025, while deliberately concealing it from Plaintiff—a video he knew was falsified and would either substantively undermine Plaintiff's claims if authentically used or strategically benefit the defense if its falsified nature remained unchallenged; immediately after reviewing the video, Strickland sent a threatening letter demanding Plaintiff withdraw her entire complaint, not directly using the video himself but strategically leveraging its contents to compel withdrawal—a demand to which Plaintiff did not accede; (2) drafting legal pleadings for Defendant Gorman while misrepresenting his professional affiliation; and (3) sending the retaliatory April 25, 2025 letter demanding withdrawal of Plaintiff's truthful statements.

19. Defendant Gorman caused injury by: (1) maintaining a facade of education law expertise while allowing Defendant Strickland to perform substantive work; (2) creating a post hoc email account for Strickland at his firm immediately after Plaintiff exposed the video tampering to create a façade of legitimacy for Strickland; and (3) facilitating retaliatory communications by failing to correct Strickland's intimidation tactics, notwithstanding his role as counsel of record, given the public entity's obligatory transparency protocols.

20. This direct chain of causation satisfies the standard established in *Monell v. Department of Social Services*, 436 U.S. 658 (1978), requiring a "direct causal link" between the defendants' actions and the constitutional deprivation.

21. Defendants' conduct has undermined Plaintiff's constitutional rights to due process, equal protection, and access to courts, while subjecting Plaintiff to retaliatory treatment for exercising protected First Amendment rights in exposing official misconduct.

22. Had Defendant Bouldin properly fulfilled Plaintiff's initial OPRA request submitted on September 28, 2024, this matter could have been immediately presented to the judge during Mia Musachio's first criminal court appearance on October 1, 2024. Instead, PPS BOE Attorney Vittorio LaPira improperly represented Musachio and requested more time to review evidence he had known about for months. This established the first link in a pattern of coordinated attorney misconduct at Princeton Public Schools.

23. This pattern continued through Defendant Gorman's superficial involvement while Strickland performed substantive work, culminating in the deliberate falsification of video evidence. The defendants knew that if Plaintiff had obtained the authentic video showing Musachio approaching her—contrary to Musachio's claims if she was part of the falsified video—their legal position would have immediately collapsed. Their actions demonstrate a calculated strategy to conceal evidence rather than address misconduct.

24. The new Princeton Public Schools administration, Dr. Angela Siso Stentz, who replaced Interim HR Superintendent Rebecca Gold, likely would have resolved this matter quickly and appropriately if provided with the authentic, unaltered video evidence. Instead, Defendants' deliberate obstruction created unnecessary escalation, legal expenses, and prolonged harm to Plaintiff, serving no legitimate educational or administrative purpose.

### PRELIMINARY STATEMENT

25. Princeton Public Schools Board of Education Attorney Vittorio LaPira became notably absent from this matter after Plaintiff included the NJ DOE Commissioner in an email

6

about his misrepresentation of a 1945 case law about tenure status for per diem employees to falsely claim Plaintiff did not have a personnel file after Plaintiff discovered through an OPRA request in October 2024, that false statements had been placed in her personnel file without notifying her—a discovery made through the defendants' own public email exchanges, revealing a coordinated communications trail that exposed their deliberate attempt to circumvent personnel notification requirements—while Brett Gorman (Gorman, D'Anella, & Morlok), operating under color of law in tandem with PPS Custodian Matthew Bouldin and Ted "Teddy" Strickland, Jr. (Pender & Strickland, LLC), violated Plaintiff's constitutional rights through a coordinated scheme involving falsification of an official government record and subsequent retaliatory intimidation.

26. Their actions include deliberate falsification of surveillance video obtained through an OPRA request and retaliatory measures against Plaintiff for exposing this misconduct, including the threatening Rule 1:4-8 letter of April 25, 2025, which followed a deceptive April 14, 2025, letter establishing new email protocols to legitimize Strickland's involvement.

27. This matter presents no legitimate education law defense. Unable to mount a proper defense, Defendant Gorman has established what appears to be an improper kickback arrangement whereby he bills Princeton Public Schools for Strickland's services while creating a façade of specialized education law representation.

28. Defendant Strickland, a personal injury attorney from Pender & Strickland who maintains an office in the same building as Gorman, performs all substantive legal work as evidenced by billing records obtained through OPRA requests.

7

29. This arrangement deliberately exploits Defendant Gorman's professional reputation with judges—which he prominently promotes in his biography:

> *"Due to this extensive experience, Brett is recognized as a skilled litigator and expert on public school education throughout the State. His impressive reputation is well known to public school districts, other school law attorneys, and the judges he appears before."*

30. The evidence demonstrating Defendants' misconduct is concrete and includes: (1) technical analysis showing unauthorized video splicing with green frames at timestamps 1:31-1:32; (2) OPRA-obtained billing records showing Defendant Strickland reviewed the surveillance video on February 19, 2025, weeks before the falsified version was provided to Plaintiff; (3) Princeton Police Department Report #25-11101 documenting the video falsification as a violation of N.J.S.A. 2C:28-7; (4) PPS Billing records from March 6, 2025 and March 13, 2025 revealing charges by Gorman, D'Anella & Morlok for routine OPRA request processing unnecessarily escalated to specialized legal services; and (5) communications establishing their coordinated efforts to prevent Plaintiff from informing PPS board members about the falsified evidence.

31. This case meets all requirements for federal jurisdiction under 42 U.S.C. § 1983.

32. Defendant Bouldin is a state actor by virtue of his official position. Defendants Gorman and Strickland acted in concert with state officials, meeting the state action requirement under the "joint participation" doctrine established in *Lugar v. Edmondson Oil Co., 457 U.S. 922 (1982)*, which held private parties can be liable when they are "willful participant[s] in joint activity with the State or its agents."

33. Defendant Bouldin cannot claim qualified immunity for the deliberate falsification of an official government record, which constitutes a criminal act under N.J.S.A. 2C:28-7.

34. As established in *Hope v. Pelzer, 536 U.S. 730 (2002)*, qualified immunity does not protect conduct that violates "clearly established statutory or constitutional rights of which a reasonable person would have known."

## JURISDICTION AND VENUE

35. This Court has original jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 (federal question) and specific civil rights jurisdiction pursuant to 28 U.S.C. § 1343(a)(3) and (4), as these claims arise directly under the Constitution and 42 U.S.C. § 1983, which provides a federal remedy for deprivations of constitutional rights perpetrated by persons acting under color of state law.

36. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) as they form part of the same case or controversy arising from the same common nucleus of operative facts as the federal claims.

37. Plaintiff's claims are ripe for immediate adjudication as constitutional violations have already occurred, ongoing injuries continue from falsified evidence, and delayed resolution would compound these harms.

38. Plaintiff's claims cannot be rendered moot by subsequent remedial actions under the "voluntary cessation" doctrine established in *Friends of the Earth, Inc. v. Laidlaw Environmental Services*, 528 U.S. 167 (2000).

39. The federal claims raised by Plaintiff herein are substantial and involve fundamental constitutional rights, including due process, equal protection, and First Amendment protections against retaliation. The falsification of an official government record,

9

provided through an OPRA request, creates an independent federal cause of action that does not require exhaustion of state remedies, as established in *Patsy v. Board of Regents*, 457 U.S. 496 (1982).

40. Federal jurisdiction is appropriate given the extraordinary circumstances presented, including the criminal falsification of evidence documented in Princeton Police Report #25-11101 and Defendants' ongoing pattern of procedural manipulation designed to exploit state court delays.

41. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) and (2) because Defendant Bouldin resides in this district, all events giving rise to Plaintiff's claims occurred within this district, Princeton Public Schools operates exclusively within this district, and all Defendants conducted business related to these claims in this district.

**PARTIES**

42. Plaintiff Susan Keith is a citizen of the United States. Plaintiff is a certified per diem substitute teacher who holds a Bachelor of Science degree in Computer Systems Management and an MBA in International Business. Plaintiff's background in legal advocacy, education, and technology continues to aid her in a quest for justice for herself, the public, and other vulnerable citizens.

43. Defendant Brett E.J. Gorman is an attorney with Gorman, D'Anella & Morlok (Atlantic City, NJ) and purported counsel of record for Princeton Public Schools in litigation stemming from PPS employee Mia Musachio's verbal attack on Plaintiff. Despite presenting himself as an education law expert, OPRA-obtained billing records reveal Gorman primarily performs administrative functions while dedicating his substantive PPS time to Special Education matters, with Defendant Strickland performing the actual legal

work in Plaintiff's case. After Plaintiff exposed the evidence tampering, Gorman immediately (within five days) facilitated creation of a post hoc email account for Strickland on his firm's domain to direct Plaintiff to send all correspondence to that email —but didn't address Plaintiff's allegation of a falsified government record, despite Strickland's employment at Pender & Strickland, LLC—a transparent attempt to legitimize Strickland's involvement after the fact. At all relevant times, Gorman acted under color of state law through his representation of a public educational institution.

44. Defendant Ted C. "Teddy" Strickland, Jr. is an attorney with Pender & Strickland, LLC, a personal injury litigation firm in Atlantic City, NJ. Despite lacking education law expertise and his firm never making an official appearance, Strickland drafted all substantive legal documents in Plaintiff's case. OPRA-obtained billing records reveal Strickland's work (identified as "*TS*" alongside Gorman attorneys) was billed to Princeton Public Schools by Gorman in what appears to be a kickback arrangement designed to create the false impression that an education law specialist is representing the district. Strickland drafted the Answer to Plaintiff's Complaint (with inappropriate insurance demands) that Gorman merely signed. Following Plaintiff's exposure of the falsified government record, Strickland sent threatening communications to Plaintiff on April 14 and April 25, 2025, including a Rule 1:4-8 letter, through Sara Kulp—demonstrating his role in Gorman's scheme to intimidate and harass Plaintiff while avoiding substantive issues. At all relevant times, Strickland acted under color of state law through his de facto representation of Princeton Public Schools.

45. Defendant Matthew Bouldin, who has submitted his resignation from Princeton Public Schools effective June 30, 2025, currently serves as the OPRA Records Custodian and

11

PPS BOE Secretary. This imminent departure creates urgent necessity for evidence preservation. At all relevant times, Defendant Bouldin acted under color of state law as a public education employee with official authority to process and provide government records in response to OPRA requests. After initially denying Plaintiff's September 28, 2024 request for video surveillance footage, Bouldin later provided demonstrably falsified footage that technical analysis revealed had been manipulated far beyond mere student facial redactions—showing deliberate removal of substantive interactions and timeline compressions that materially altered the evidence and constituted criminal falsification of an official government record under N.J.S.A. 2C:28-7.

## FACTUAL ALLEGATIONS

46. Defendant Gorman, who markets himself as a specialized education law expert with an "impressive reputation with judges," appears as counsel of record for Princeton Public Schools in a CEPA matter, yet billing records obtained through OPRA conclusively demonstrate that Defendant Strickland—a personal injury attorney from Pender & Strickland, LLC with no education law expertise—drafts all substantive legal pleadings while Gorman merely signed the first one and now files all of them signed by Strickland, revealing a deliberate scheme to exploit judicial relationships while concealing who is actually performing legal work.

47. This legal misrepresentation by Defendants Gorman and Strickland violates Plaintiff's constitutional rights because it: (1) constitutes arbitrary and irrational discrimination against Plaintiff as established in *Village of Willowbrook v. Olech, 528 U.S. 562 (2000)*, where the Supreme Court held that the Equal Protection Clause secures "every person within the State's jurisdiction against intentional and arbitrary discrimination"; (2) creates

an unfair procedural advantage whereby Princeton Public Schools is billed by Gorman for specialized education law services while the substantive work is performed by Strickland in what appears to be an improper kickback arrangement; and (3) frustrates meaningful access to courts by obscuring the true identity and qualifications of counsel actually opposing Plaintiff, particularly significant given there is no legitimate education law defense in this matter and Defendant Strickland has repeatedly weaponized Rule 1:4-8 safe harbor letters not to advance legitimate legal positions but solely to intimidate, harass, and retaliate against Plaintiff for exposing misconduct, including the April 25, 2025 letter demanding withdrawal of Plaintiff's truthful exposure of the falsified government record – a criminal offense that the public should be made aware of, including PPS administration and PPS BOE - and the underlying representation scheme

48. OPRA billing records reveal that Defendant Gorman functions merely as an administrative attorney, creating a fraudulent facade of education law expertise while Defendant Strickland performs all substantive legal work for Princeton Public Schools, as evidenced by specific billing entries on February 19, 2025, March 6, 2025, and March 13, 2025, yet Strickland signs documents as if he were an attorney at Gorman's firm rather than properly identifying himself as a member of Pender & Strickland, LLC.

49. After Plaintiff exposed the tampering of video evidence by Princeton Public Schools on April 9, 2025—a criminal offense under N.J.S.A. 2C:28-7—Defendant Gorman hastily created an email account for Defendant Strickland on the Gorman, D'Anella & Morlok email domain, a transparent attempt to retroactively legitimize Strickland's involvement only after Plaintiff confronted their misconduct, when Strickland should have properly signed all documents as a member of his own firm.

50. This arrangement between Defendants Gorman and Strickland creates a deliberate misrepresentation to the court and the public regarding who is actually representing Princeton Public Schools, violating Plaintiff's right to meaningful access to courts as protected under *Christopher v. Harbury, 536 U.S. 403 (2002)*, which recognized that officials may not create "systemic official action [that] frustrates a plaintiff or plaintiff class in preparing and filing suits."

51. Sara Kulp, a legitimate attorney at Gorman, D'Anella & Morlok, continues to transmit communications on Defendant Strickland's behalf despite his conspicuous absence from direct contact following his initial threatening letter, further demonstrating the artificial nature of Strickland's purported association with Gorman's firm and the deliberately deceptive structure of this representation.

52. This arrangement between Defendant Gorman and Defendant Strickland violates the fundamental requirement of due process to be heard at a meaningful time and in a meaningful manner as established in *Armstrong v. Manzo, 380 U.S. 545 (1965)*, which held that "the right to be heard 'must be granted at a meaningful time and in a meaningful manner'" - a right undermined by misrepresentation of counsel designed to intimidate rather than advance legitimate legal positions.

53. Defendant Strickland initially signed a pleading as if he were an attorney at Defendant Gorman's firm despite being employed by Pender & Strickland, LLC, demonstrating active misrepresentation of his professional affiliation that continues to mislead the court about the true nature of legal representation.

54. Furthermore, this arrangement between Defendant Gorman and Defendant Strickland demonstrates the high risk of erroneous deprivation through procedural manipulation

14

addressed in *Mathews v. Eldridge, 424 U.S. 319 (1976)*, which established that due process analysis must consider "the risk of an erroneous deprivation of such interest through the procedures used" - a risk substantially increased by misrepresentation of legal counsel in what appears to be an improper kickback scheme designed to exploit Gorman's judicial relationships while Strickland performs work without proper disclosure.

55. Defendant Bouldin, in his capacity as PPS Custodian of records, directly participated in tampering with video surveillance evidence—an official government record and a criminal offense under N.J.S.A. 2C:28-7.

56. Defendant Bouldin claimed to have merely "redacted" student faces from the video evidence, but Plaintiff's technical analysis and detailed documented memory of the event, reveals substantive content showing interactions relevant to Plaintiff's claims was selectively removed and reframed, going far beyond facial redaction, including green frames at the 1:31-1:32 mark that definitively show splicing.

57. The technical analysis of the falsified video provides conclusive, objectively verifiable evidence of tampering that far exceeds the plausibility standard established in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

58. Plaintiff's technical analysis of the falsified surveillance video reveals: (1) green frames at timestamps 1:31-1:32 that definitively prove unauthorized splicing occurred; (2) timeline compression creating impossible chronological sequences; (3) content removal beyond mere facial redaction; and (4) deliberate deletion of the verbal attack on Plaintiff.

59. Plaintiff's documentation of the concrete technical evidence is corroborated by Princeton Police Report #25-11101, which documents the video falsification as a violation of N.J.S.A. 2C:28-7, detailed by Plaintiff, providing independent third-party validation of the criminal nature of Defendants' conduct.

60. The combination of documented billing records showing Defendant Strickland reviewed the video on February 19, 2025, technical analysis and just reviewing it, demonstrating tampering, and official police documentation creates a factual foundation that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" as required by *Iqbal*.

61. As a state employee with official custodial responsibilities, Defendant Bouldin's actions in tampering with and providing falsified evidence directly establish the state action requirement for constitutional claims, satisfying the "under color of state law" prerequisite for § 1983 claims established in *West v. Atkins, 487 U.S. 42 (1988)*, which held that a state employee acts under color of state law when exercising responsibilities pursuant to state authority.

62. Defendants' falsifying of an official government record constitutes exactly the kind of "deliberately planned and carefully executed scheme to defraud" condemned in *Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944)*, a principle recently reaffirmed in *Micron Technology, Inc. v. Rambus Inc. (2013)*, which recognized that such fraudulent concealment arises from "deliberately planned and carefully executed scheme[s] to defraud the courts."

16

63. The NJ OPRA request law is the mechanism that allows access to official NJ government records, making this manipulation particularly egregious as it undermines both governmental transparency and judicial integrity.

64. Plaintiff's technical analysis sent to Defendants conclusively demonstrates that the video evidence provided by Defendant Bouldin was manipulated far beyond student facial redactions, removing sections showing interactions that would have supported Plaintiff's claims and creating impossible timeline compressions that fundamentally altered the evidence.

65. The falsified video manipulation by Defendant Bouldin, would have been approved by Defendants Strickland and Gorman, prevented Plaintiff from having meaningful access to judicial processes as recognized in *Lewis v. Casey, 518 U.S. 343 (1996)*, which established that the right of access to courts includes "the tools... to attack their sentences, directly or collaterally, and... to challenge the conditions of their confinement."

66. Both Defendants Gorman and Strickland had knowledge of this tampering yet took no corrective action to address the falsified record or provide the true record of the surveillance, despite their February 19, 2025 billing for review of this video.

67. The video tampering, which deleted a verbal attack on Plaintiff by another PPS employee, directly interferes with the right of access to courts protected under *Tennessee v. Lane, 541 U.S. 509 (2004)*, which recognized that "the Due Process Clause also requires the States to afford certain civil litigants a 'meaningful opportunity to be heard' by removing obstacles to their full participation in judicial proceedings."

68. As counsel of record, Defendant Gorman had a professional and ethical obligation to verify the integrity of official government evidence submitted by Defendant Bouldin in

17

an OPRA request that they verified, approved, and billed PPS for as revealed in their billing records.

69. Defendants Gorman, Strickland, and Bouldin had knowledge that this falsified official government record would be sent to Plaintiff as an official government record and later would be used as legal evidence for a criminal matter as well, as evidenced by Attorney Cridge's March 25, 2025 statement in open criminal court that this video would exonerate Defendant Musachio.

70. Defendants knowingly permitted the transmission of a falsified official government record to Plaintiff, violating the core components of procedural due process identified in *Carey v. Piphus, 435 U.S. 247 (1978).*

71. In response to Plaintiff's detailed technical analysis exposing the video evidence tampering in her April 9, 2025 letter, Defendant Strickland's sole objective was to control the narrative and prevent Plaintiff from informing Princeton Public Schools' Board Members and Administration, which as a public federally funded entity, Plaintiff has a right to share this new detail of misconduct.

72. When Plaintiff informed PPS Board Members and Administration about this serious misconduct, Defendant Strickland, again through Sara Kulp, sent a letter to Plaintiff on April 14, 2025, with a newly created email for Strickland at Gorman's firm directing Plaintiff to send all communications only to this new email address.

73. On April 25, 2025, Defendant Strickland sent Plaintiff another email, through Kulp, with a threatening Rule 1:4-8 letter demanding Plaintiff withdraw her letter to the courts which exposed the falsified video, constituting direct retaliation for protected speech.

74. Defendant Gorman took no action to correct this attempted intimidation and retaliation meant to cause harm and stress to Plaintiff, despite his role as counsel of record, thus ratifying and approving Defendant Strickland's retaliatory actions.

75. This retaliatory action in response to protected speech forms the basis for a First Amendment retaliation claim as recognized in *Hartman v. Moore, 547 U.S. 250 (2006)*, which established that a plaintiff must show that official actions would "chill a person of ordinary firmness from continuing to engage in the protected activity" and that the retaliatory motive was a "substantial" or "motivating" factor.

76. At no point did any Defendant address the substance of Plaintiff's technical analysis demonstrating video tampering, instead focusing entirely on procedural maneuvers to prevent disclosure of the falsified government record to PPS Board members and administrators.

77. This systematic obstruction violates Plaintiff's right of access to courts as affirmed in *Bounds v. Smith, 430 U.S. 817 (1977)*, which recognizes this right is "founded in the Due Process Clause" and requires providing the "tools... that the inmates need in order to attack their sentences, directly or collaterally."

78. The meticulously documented actions of Defendants Gorman, Strickland, and Bouldin constitute a coordinated, systematic effort to obstruct justice through deliberate misrepresentation of legal counsel and calculated manipulation of critical video evidence as revealed through OPRA-obtained billing records and technical analysis.

79. Defendants' coordinated scheme directly violates the foundational principle established in *Christopher v. Harbury, 536 U.S. 403 (2002)*, that government officials and those acting in concert with them may not deliberately create procedural obstacles designed to

19

prevent meaningful access to judicial processes, particularly when such obstacles involve falsification of official government records.

80. The creation and maintenance of an artificial representation structure—where Defendant Strickland performs all substantive legal work while Defendant Gorman provides only the facade of education law expertise despite billing as counsel of record—was deliberately designed by both attorneys to mislead the court, exploit Gorman's judicial relationships, and prevent Plaintiff from receiving fair representation of opposing counsel.

81. The deliberate manipulation of official government video evidence by Defendant Bouldin, with the knowledge, approval, and active complicity of Defendants Gorman and Strickland as demonstrated by their February 19, 2025 billing records, constitutes a severe violation of the public trust and multiple constitutional rights, particularly the fundamental right of access to courts affirmed in *Tennessee v. Lane, 541 U.S. 509 (2004)* as "among the most precious of the liberties safeguarded by the Bill of Rights."

82. The April 25, 2025 email from Sara Kulp explicitly demonstrates the artificial communication structure designed to conceal Strickland's role, as it shows Kulp functioning as an intermediary despite Strickland being copied on the very same email— an arrangement that serves no legitimate professional purpose but rather evidences a deliberate attempt to maintain a paper trail showing Gorman's firm as the official communication channel.

83. The email header "to me [Plaintiff], Teddy, Brett" conclusively proves that both Strickland and Gorman were active participants in this communication, yet Kulp inexplicably states *"Please see the attached correspondence from Teddy Strickland,*

*Esq.,"* rather than Strickland simply sending the correspondence himself, a communication protocol that serves no legitimate legal purpose and exists solely to maintain the facade of proper representation.

84. The documented evidence of Defendant Strickland's activities (drafting pleadings, sending threatening letters, having a firm email, etc.) goes far beyond any reasonable definition of a "consultant" relationship, precluding Defendants from claiming such a relationship as a defense.

85. Defendant Bouldin cannot claim qualified immunity for the deliberate falsification of an official government record, which constitutes a criminal act under N.J.S.A. 2C:28-7 as documented in Princeton Police Incident Report #25-1101, as criminal conduct falls outside the protection of qualified immunity as established in *Hope v. Pelzer, 536 U.S. 730 (2002)*.

86. Defendants Gorman and Strickland acted in concert with state official Defendant Bouldin as evidenced by: (a) OPRA billing records showing Strickland reviewed the falsified video on February 19, 2025; (b) documentation that Defendants participate in reviewing and approving OPRA requests; and (c) their coordinated actions following exposure of the falsification.

87. This case presents precisely the kind of "extraordinary circumstances" that warrant immediate federal court intervention, including bad faith prosecution, continuing harassment, extraordinary need for relief, and state court incapability of fair adjudication when evidence has been manipulated by officials.

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF DUE PROCESS RIGHTS UNDER THE FOURTEENTH AMENDMENT (42 U.S.C. § 1983)

88. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

89. Defendants Gorman, Strickland, and Bouldin's deliberate misrepresentation of legal counsel, tampering with an official government record of video evidence obtained through a NJ OPRA request, and retaliating against Plaintiff by sending her a Rule 1:4-8 letter demanding withdrawal of her letter exposing the misconduct, constitutes a severe, multifaceted deprivation of Plaintiff's procedural and substantive due process rights under the Fourteenth Amendment.

90. Defendant Bouldin's direct role as a state employee with custodial authority in creating, manipulating, and providing the falsified government record establishes the state action necessary for this constitutional claim, while Defendants Gorman and Strickland's coordinated actions with Bouldin to conceal and utilize this falsified evidence bring them under color of state law as established in *Dennis v. Sparks, 449 U.S. 24 (1980)*, which held that private parties who conspire with state officials to deprive others of constitutional rights act "under color of state law."

91. As established in *Goldberg v. Kelly, 397 U.S. 254 (1970)*, procedural due process requires, at minimum, "timely and adequate notice and an effective opportunity to defend," which is rendered meaningless when evidence has been deliberately falsified and representation deliberately misrepresented.

92. By manipulating crucial video evidence that deleted a verbal attack on Plaintiff, creating a fraudulent representation structure where Defendant Strickland drafted substantial work while Defendant Gorman presented himself as counsel of record, and refusing to address

22

the substantive evidence tampering allegations, Defendants have effectively denied Plaintiff the opportunity to present this matter in a fair and impartial hearing on the merits of her claims, violating "the fundamental requirement of due process...to be heard at a meaningful time and in a meaningful manner" as articulated in *Armstrong v. Manzo, 380 U.S. 545 (1965)*.

93. The calculated creation of an email account for Defendant Strickland at Defendant Gorman's firm on April 14, 2025, immediately following Plaintiff's April 9, 2025 exposure of evidence tampering, followed by the strange communication pattern where Kulp forwards Strickland's messages while he and Gorman are copied on the same email, represents a deliberate procedural manipulation specifically designed to obstruct justice and deprive Plaintiff of due process by creating a misleading paper trail about who is actually representing Princeton Public Schools.

94. Under the three-part analysis established in *Mathews v. Eldridge, 424 U.S. 319 (1976)*, Defendants' actions demonstrate the high risk of erroneous deprivation through such procedures, as: (1) Plaintiff's interest in accurate evidence and proper legal representation is substantial; (2) the risk of erroneous deprivation through falsified evidence and misrepresentation of counsel is extremely high; and (3) the government's interest in maintaining these deceptive practices serves no legitimate purpose.

95. This violation of due process rights was carried out by Defendants acting under color of state law through their representation of a public educational institution, their coordination with a state employee, and, in Defendant Bouldin's case, through direct employment by a state entity, establishing the state action required for § 1983 liability as recognized in *Lugar v. Edmondson Oil Co., 457 U.S. 922 (1982)*.

96. As recognized in *Carey v. Piphus, 435 U.S. 247 (1978)*, these actions violate the core components of procedural due process under the Fourteenth Amendment, which requires that government actions that deprive individuals of "liberty" or "property" interests within the meaning of the Due Process Clause must be implemented in accordance with fair procedures.

97. Defendants' coordinated actions to falsify evidence, misrepresent legal counsel, and retaliate against Plaintiff for exposing this misconduct constitute exactly the type of "deliberate, procedural shortcuts" that the Supreme Court found unconstitutional in *Cleveland Board of Education v. Loudermill, 470 U.S. 532 (1985)*, where the Court emphasized that due process is intended to protect persons "from the mistaken or unjustified deprivation of life, liberty, or property."

**COUNT II**

**CONSPIRACY TO VIOLATE CIVIL RIGHTS (42 U.S.C. § 1983)**

98. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

99. Defendants Gorman, Strickland, and Bouldin engaged in a deliberate conspiracy to violate Plaintiff's constitutional rights through their coordinated misrepresentation of legal counsel and systematic manipulation of video evidence, creating exactly the kind of concerted action prohibited by 42 U.S.C. § 1983 when private parties conspire with state actors.

100. This conspiracy directly implicates the principles established in *Dennis v. Sparks, 449 U.S. 24 (1980)*, which held that private parties who conspire with state officials to deprive others of constitutional rights act "under color of state law" for purposes of § 1983 liability, and *Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970)*, which established

that private parties who willfully participate in joint action with state officials act under color of law.

101.    This conspiracy involved multiple documented overt acts between the defendants, including:

a) Creating a fraudulent representation structure where Strickland performs substantive work while Gorman provides the facade of expertise, as evidenced by OPRA billing records showing Strickland drafting a pleading that Gorman merely signed;

b) Deliberately tampering with video evidence by Defendant Bouldin beyond mere facial redactions, including creating green frames at the 1:31-1:32 mark that definitively show splicing;

c) Accepting and approving tampered video evidence despite knowledge of its compromised integrity, as demonstrated by their February 19, 2025 billing records showing review of this video;

d) Creating an email account for Strickland at Gorman's firm on or before April 14, 2025 to retroactively legitimize his involvement immediately after Plaintiff exposed the video tampering;

e) Using Kulp as an intermediary to deliver Strickland's communications on April 25, 2025 while maintaining artificial distance despite Strickland being copied on the same email; and

f) Threatening Plaintiff with Rule 1:4-8 sanctions on April 25, 2025 specifically for exposing this misconduct, demonstrating retaliatory intent.

102.    These coordinated actions between Defendants constitute "vindictive action by government officials toward a particular individual" that violates the Equal Protection Clause as established in *Esmail v. Macrane, 53 F.3d 176 (7th Cir. 1995)*, which recognized that the Constitution's equal protection guarantee is violated when government officials engage in "a spiteful effort to 'get' [someone] for reasons wholly unrelated to any legitimate state objective."

103.    Defendants' conspiracy meets all requirements for § 1983 conspiracy liability established in *Lugar v. Edmondson Oil Co., 457 U.S. 922 (1982)*: (1) a conspiracy between private persons and state actors; (2) a shared goal to deprive the plaintiff of constitutional rights; (3) specific overt acts in furtherance of the conspiracy; and (4) an actual deprivation of constitutional rights.

104.    As a direct and proximate result of this conspiracy between Defendants, Plaintiff has suffered and continues to suffer substantial harm, including the denial of meaningful access to judicial processes, emotional distress from receiving threatening communications, and the deprivation of the opportunity for a fair and impartial hearing based on accurate evidence and proper legal representation.

105.    This denial of access violates the principles articulated in *Christopher v. Harbury, 536 U.S. 403 (2002)*, which protects the right to meaningful and effective access to judicial processes, and recognized that this right is violated by actions that frustrate "a plaintiff... in preparing and filing suits" through "systemic official action."

106.    The timing and sequence of defendants' actions—manipulating evidence, creating a sham email account immediately after exposure of misconduct, and sending retaliatory threats—demonstrates specific intent to deprive Plaintiff of constitutional rights, meeting

26

the standard for conspiracy established in *Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970)*, which recognized that conspiracy can be proven by circumstantial evidence of concerted action toward a common goal.

**COUNT III**

**VIOLATION OF NEW JERSEY OPEN PUBLIC RECORDS ACT (N.J.S.A. 47:1A-1 et seq.)**

107.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

108.     Defendant Bouldin, as the official Records Custodian for Princeton Public Schools, deliberately violated the New Jersey Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 et seq., by engaging in a sequential pattern of discriminatory treatment and falsification:

    a)  Initially denying Plaintiff's lawful OPRA request submitted on September 28, 2024, for video surveillance footage capturing the May 15, 2024 verbal attack and subsequent harassment, citing vague "privacy concerns" and "security measures" as pretextual justifications;

    b)  Providing this same video surveillance footage to Defendant Strickland for review on February 19, 2025, as evidenced by OPRA-obtained billing records, demonstrating discriminatory treatment of Plaintiff's identical request in violation of equal protection principles;

    c)  Only after Plaintiff discovered through a separate OPRA request of billing records by Defendant Gorman to determine where Defendant Strickland fits in, that Defendant Strickland had already viewed this video, reluctantly agreeing to provide the requested footage following multiple extension requests;

27

d) Deliberately providing on April 7, 2025, a falsified and manipulated version of the video that went far beyond mere "redaction of student faces," as conclusively demonstrated by technical analysis showing unauthorized content removal, timeline manipulation, and video splicing evidenced by green frames at the 1:31-1:32 mark;

e) Intentionally deleting, from the video, the actual verbal attack on Plaintiff by another PPS employee, thereby concealing critical evidence relevant to Plaintiff's legal claims;

f) Creating and distributing an official government record that was deliberately falsified beyond the scope of permissible redactions under OPRA.

109. Defendants Gorman and Strickland aided and abetted this OPRA violation by:

a) Reviewing the original, unaltered video on February 19, 2025, as documented in OPRA-obtained billing records, yet failing to disclose its existence to Plaintiff or correct the subsequent manipulation;

b) Approving the provision of the falsified official government record to Plaintiff despite having knowledge of its falsification;

c)  Attempting to silence Plaintiff's exposure of this OPRA violation through their retaliatory April 25, 2025 Rule 1:4-8 letter demanding withdrawal of Plaintiff's truthful statements about the falsification.

110. This pattern of conduct—denial of access to Plaintiff while granting access to others, followed by provision of deliberately falsified evidence, and then retaliation for exposing the falsification—establishes a coordinated scheme that violates both OPRA

28

and equal protection principles by treating Plaintiff differently from others seeking identical records without any rational basis.

111. OPRA explicitly provides that "a public official, officer, employee or custodian who knowingly and willfully violates [OPRA]... shall be subject to a civil penalty." N.J.S.A. 47:1A-11(a). Defendant Bouldin's actions constitute such a knowing and willful violation.

112. The falsification of this official government record and sent to Plaintiff on April 7, 2025, also constitutes a criminal offense under N.J.S.A. 2C:28-7, as documented in Princeton Police Report #25-11101, providing third-party validation by law enforcement of the severity of this misconduct.

113. The purpose of OPRA is "to maximize public knowledge about public affairs in order to ensure an informed citizenry and to minimize the evils inherent in a secluded process." *Mason v. City of Hoboken, 196 N.J. 51, 64-65 (2008).* Defendants' deliberate falsification of records directly undermines this essential purpose and the transparency required in democratic governance.

114. OPRA guarantees that "government records shall be readily accessible for inspection, copying, or examination by the citizens of this State" and that "any limitations on the right of access... shall be construed in favor of the public's right of access." N.J.S.A. 47:1A-1. Defendants' initial denial followed by provision of manipulated video represents a fundamental violation of this statutory guarantee as the falsified video is the same as a denial of the true record.

115. As a direct and proximate result of Defendants' OPRA violations, Plaintiff has suffered substantial harm, including:

a) Denial of accurate government records to which she was legally entitled;

b) Disparate treatment compared to others seeking identical records;

a) Inability to present truthful evidence in related legal proceedings;

b) Forced time and effort to conduct technical analysis of the manipulated video;

c) Delays in pursuing legitimate legal claims due to falsified evidence;

d) Retaliation for exercising statutory rights to public records.

116. The discriminatory treatment in processing Plaintiff's OPRA request compared to providing the same record to others violates the Equal Protection Clause of the Fourteenth Amendment, which protects individuals from being intentionally treated differently from others similarly situated without rational basis, as established in Village of *Willowbrook v. Olech, 528 U.S. 562 (2000)*.

117. This cause of action may be brought directly in this federal proceeding under the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a), as it forms part of the same case or controversy as Plaintiff's federal claims and derives from a common nucleus of operative facts involving the same falsified evidence, same actors, and same pattern of misconduct.

**COUNT IV**
**FIRST AMENDMENT RETALIATION (42 U.S.C. § 1983)**

118. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

119. Plaintiff engaged in constitutionally protected activity by exposing evidence tampering and official misconduct through her April 9, 2025 letter documenting technical analysis of the manipulated video evidence, which addresses matters of significant public concern regarding the integrity of government records and legal proceedings.

120.     This activity is protected under the First Amendment, which *BE&K Construction Co. v. NLRB, 536 U.S. 516 (2002)*, recognizes as "one of the most precious of the liberties safeguarded by the Bill of Rights," particularly when it involves exposing potential government misconduct that affects public trust and judicial integrity.

121.     In response to this protected activity, Defendants Gorman, Strickland, and Bouldin implemented a coordinated retaliatory strategy against Plaintiff through threatening communications, procedural manipulation, and continued misrepresentation specifically designed to silence Plaintiff and prevent further exposure of their misconduct.

122.     Defendants' retaliatory actions following Plaintiff's protected speech satisfy all elements of a First Amendment retaliation claim as established in *Nieves v. Bartlett*, 139 S. Ct. 1715 (2019): (1) Plaintiff engaged in constitutionally protected speech by exposing the falsification of official government records on April 9, 2025; (2) Defendants took adverse action against Plaintiff by creating a sham email account for Strickland on April 14, 2025 and sending the threatening Rule 1:4-8 letter on April 25, 2025; and (3) Plaintiff's protected speech was the substantial motivating factor behind these adverse actions, as evidenced by the immediate temporal proximity—just 5 days between exposure and email creation, and 16 days between exposure and retaliatory threat. As recognized in *Hartman v. Moore*, 547 U.S. 250 (2006), retaliatory motive can be established through circumstantial evidence, including suspicious timing, disparate treatment, and departures from normal procedure—all of which are present here.

123.     Furthermore, these retaliatory actions would 'chill a person of ordinary firmness from continuing to engage in the protected activity' as required by *Bennett v. Hendrix,*

31

*423 F.3d 1247 (11th Cir. 2005)*, particularly given the professional and legal implications of the threatened sanctions.

124.    As established in *Thaddeus-X v. Blatter, 175 F.3d 378 (6th Cir. 1999)*, a First Amendment retaliation claim requires: engagement in protected conduct, adverse action that would deter a person of ordinary firmness, and a causal connection between these elements—all of which are conclusively established by the chronology of events and documentary evidence in this case.

125.    Defendant Strickland's Rule 1:4-8 letter sent on April 25, 2025, with Defendant Gorman's tacit approval as counsel of record, demanding Plaintiff withdraw her letter exposing the falsified video, constituted direct retaliation for Plaintiff's protected speech regarding matters of public concern, with the timing of this threatening letter coming precisely two weeks after Plaintiff exposed the criminal offense and only after Gorman's firm first attempted to legitimize Strickland's representation by creating a sham email account with the firm's domain to further mislead the public and courts.

126.    The temporal sequence of events—Plaintiff's April 9, 2025 exposure of video tampering, followed by the creation of a firm email for Strickland, followed by an April 14, 2025 letter establishing new communication protocols, culminating in the April 25, 2025 Rule 1:4-8 demand—provides compelling evidence of retaliatory motive as recognized in *Bloch v. Ribar, 156 F.3d 673 (6th Cir. 1998)*, which held that temporal proximity between protected speech and adverse action strongly supports an inference of retaliatory intent.

127.    This retaliatory campaign would chill a person of ordinary firmness from continuing to engage in the protected activity of exposing official misconduct, as the

threat of sanctions and professional intimidation represents a severe adverse consequence specifically designed to silence criticism and conceal wrongdoing.

128.    *Hartman v. Moore, 547 U.S. 250 (2006)*, recognizes that an official's retaliatory motive in response to protected speech can form the basis of a First Amendment retaliation claim, even if it was not the sole factor, so long as it was a substantial or motivating factor, which is clearly demonstrated by Defendants' failure to address the substance of the video tampering allegations while focusing exclusively on silencing Plaintiff.

129.    As a direct and proximate result of this retaliation perpetrated by Defendants, Plaintiff has suffered and continues to suffer substantial harm, including emotional distress from receiving threatening communications, damage to professional reputation through baseless allegations of a frivolous filing letter for informing the courts, and direct interference with constitutional and legal rights to expose official misconduct and access judicial processes.

130.    The Supreme Court in *Crawford-El v. Britton, 523 U.S. 574 (1998)*, emphasized that "the freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state," a principle that applies equally to Plaintiff's right to challenge misconduct by government officials and their representatives without facing coordinated retaliation.

## COUNT V
### VIOLATION OF EQUAL PROTECTION UNDER THE FOURTEENTH AMENDMENT (42 U.S.C. § 1983)

131.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

132.     Defendants' actions violate Plaintiff's right to equal protection under the law as guaranteed by the Fourteenth Amendment to the United States Constitution through a pattern of deliberate, arbitrary, and irrational discrimination specifically targeted at Plaintiff.

133.     Defendant Bouldin's status as a state employee and official records custodian directly establishes state action for this constitutional claim, while Defendants Gorman and Strickland acted in concert with this state official to deprive Plaintiff of equal protection rights.

134.     As established in *Willowbrook v. Olech, 528 U.S. 562 (2000)*, the Supreme Court recognized that equal protection claims can be brought by a "class of one" where the plaintiff alleges that they have been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment, a standard clearly met by the coordinated actions taken uniquely against Plaintiff.

135.     *The Willowbrook v. Olech* precedent directly applies to Plaintiff's situation, where deliberate misrepresentation of counsel and evidence tampering created precisely the kind of arbitrary and irrational differential treatment that the Equal Protection Clause was designed to prevent, particularly when perpetrated by officials acting under color of state law as Defendant Bouldin denied Plaintiff's September 28, 2024 NJ OPRA request for the surveillance video but billing records showed Defendant Strickland viewed it on February 19, 2025, to which Plaintiff was then provided the falsified video record but only after pointing out the discriminatory treatment.

136.     The Supreme Court in *Village of Willowbrook* explicitly held that the purpose of the Equal Protection Clause "is to secure every person within the State's jurisdiction

34

against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents," a principle that directly addresses the improper execution of legal representation and evidence handling in Plaintiff's case.

137.    Plaintiff has been treated differently from other similarly situated individuals with legitimate legal claims, through Defendants' coordinated actions including:

a)  The deliberate creation of an artificial legal representation structure between Gorman and Strickland, as evidenced by OPRA billing records showing Strickland drafting all pleadings while Gorman merely signed one;

b)  The deliberate tampering with video evidence by Defendant Bouldin, including green frames at 1:31-1:32 showing splicing rather than mere student facial redaction;

c)  The acceptance and use of manipulated evidence specifically related to Plaintiff's and denied to Plaintiff on September 28, 2024, despite February 19, 2025 billing records showing review of this video; and

d)  The systematic misrepresentations designed to prevent meaningful review of Plaintiff's claims, including the creation of an email account for Strickland at Gorman's firm immediately after Plaintiff exposed the video tampering.

138.    This differential treatment lacks any rational basis and is motivated solely by improper considerations, including the desire to shield institutional misconduct from scrutiny and accountability, to conceal evidence of a verbal attack on Plaintiff by another PPS employee, and to prevent Plaintiff from accessing accurate evidence crucial to her legal claims.

35

139.    As further established in *Engquist v. Oregon Department of Agriculture, 553 U.S. 591 (2008)*, while the Court limited class-of-one claims specifically in the public employment context, it explicitly reaffirmed that the Equal Protection Clause continues to protect individuals against arbitrary and irrational discrimination in other contexts, particularly emphasizing that class-of-one claims remain valid in situations involving "the government's regulation of property" and other "arm's-length" interactions between citizens and government, such as Plaintiff's OPRA request for official government records and the subsequent falsification of those records by Defendants.

140.    The deliberate misrepresentation of legal counsel and tampering with official government video evidence constitutes precisely the kind of arbitrary, irrational, and vindictive discrimination that the Equal Protection Clause was specifically designed to prevent, as it singles out Plaintiff for uniquely unfavorable treatment with no legitimate governmental purpose.

141.    Furthermore, under *Esmail v. Macrane, 53 F.3d 176 (7th Cir. 1995)*, a seminal Circuit Court decision, vindictive action by government officials toward a particular individual violates the Equal Protection Clause when it aims to punish or silence the individual for exercising their legal rights, particularly when such actions involve "a spiteful effort to 'get' [someone] for reasons wholly unrelated to any legitimate state objective."

142.    The coordinated efforts to misrepresent counsel, send Plaintiff a retaliatory sanctions letter demanding withdrawal of her exposure of video tampering, and manipulate evidence constitute precisely the kind of vindictive action condemned in

36

Esmail, as they represent a calculated strategy to silence Plaintiff and obstruct her access to accurate evidence and proper legal representation.

143.    Defendants' coordinated efforts to misrepresent legal counsel, send a retaliatory letter on April 25, 2025, and tamper with critical video evidence constitute vindictive action aimed at punishing and silencing Plaintiff for legitimately seeking accountability for workplace violations and exposing potential criminal misconduct in the handling of official government records.

144.    As recognized in *Sioux City Bridge Co. v. Dakota County, 260 U.S. 441 (1923)*, "the purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the state's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents," a precedent that directly addresses the improper execution of legal representation through the artificial arrangement between Defendants Gorman and Strickland.

145.    The systematic manipulation of legal representation and evidence in Plaintiff's case represents precisely the kind of "improper execution through duly constituted agents" that the Equal Protection Clause was designed to prevent, particularly when such manipulation deliberately creates procedural obstacles that violate fundamental constitutional rights as recognized in *Christopher v. Harbury, 536 U.S. 403 (2002).*

### EXTRAORDINARY CIRCUMSTANCES WARRANTING FEDERAL INTERVENTION

146.    This case presents precisely the kind of "extraordinary circumstances" that warrant immediate federal court intervention despite ongoing state proceedings, as the

deliberate manipulation of video evidence by state officials demonstrates bad faith prosecution excepted from Younger abstention principles.

147.    Recent Supreme Court precedent in *Sprint Communications, Inc. v. Jacobs, 571 U.S. 69 (2013)*, has significantly narrowed Younger abstention, emphasizing that "circumstances fitting within the Younger doctrine...are exceptional" and limited primarily to ongoing state criminal proceedings, civil enforcement proceedings akin to criminal prosecutions, and civil proceedings involving "orders uniquely in furtherance of the state courts' ability to perform their judicial functions."

148.    None of these categories encompasses Plaintiff's case, where federal intervention is sought to address the criminal falsification of evidence that undermines rather than furthers state judicial functions.

149.    Also, as recognized in *Dombrowski v. Pfister*, 380 U.S. 479 (1965), federal courts need not abstain where state proceedings are conducted in bad faith or with the purpose of harassment—precisely the situation presented by Defendants' deliberate falsification of official government records.

150.    This case presents precisely the kind of "extraordinary circumstances" that warrant immediate federal court intervention despite ongoing state proceedings, as the deliberate manipulation of video evidence by state officials demonstrates bad faith prosecution excepted from Younger abstention principles.

151.    As in *Applied Underwriters, Inc. v. Lara, 24 F.4th 1199 (9th Cir. 2021)*, extraordinary circumstances creating "an extraordinarily pressing need for immediate federal equitable relief" are present in this case through the falsification of official government records and subsequent obstruction of justice.

152.    Equitable relief is not merely appropriate but essential in this case as monetary damages alone cannot remedy the ongoing constitutional violations.

153.    As established in *Winter v. Natural Resources Defense Council*, 555 U.S. 7 (2008), a plaintiff seeking preliminary injunction must demonstrate: (1) likelihood of success on the merits; (2) likelihood of irreparable harm absent preliminary relief; (3) balance of equities favoring the plaintiff; and (4) public interest favoring an injunction.

154.    Plaintiff satisfies all four elements for injunction: First and foremost, the documented evidence of video falsification and coordinated misrepresentation demonstrates clear likelihood of success on constitutional claims. Second, irreparable harm continues through the ongoing use of falsified evidence and artificial representation structure, creating the kind of 'injury [that] cannot be undone through monetary remedies' recognized in *Amoco Production Co. v. Village of Gambell*, 480 U.S. 531 (1987). Third, the balance of equities overwhelmingly favors Plaintiff, as Defendants would suffer no legitimate hardship from being required to produce unaltered evidence and properly disclose representation arrangements. Fourth, the public interest strongly favors preventing government officials from falsifying official government records and obstructing justice, as recognized in *Melendres v. Arpaio*, 695 F.3d 990 (9th Cir. 2012), which held that "it is always in the public interest to prevent the violation of a party's constitutional rights."

155.    Federal intervention is warranted when "extraordinary circumstances render the state court incapable of fairly and fully adjudicating the federal issues before it" *(Mounkes v. Conklin, 922 F. Supp. 1501 (D. Kan. 1996))*, which applies here as the

39

manipulation of evidence directly compromises state courts' ability to fairly adjudicate matters.

156.     Defendant Bouldin cannot claim qualified immunity for the deliberate falsification of an official government record, which constitutes a criminal act under N.J.S.A. 2C:28-7 as documented in Princeton Police Report #25-11101, as criminal conduct falls outside the protection of qualified immunity (*Hope v. Pelzer, 536 U.S. 730 (2002)*).

157.     All Defendants violated clearly established rights that any reasonable official would have known, as the right to be free from deliberately falsified evidence is "beyond debate" as required by *Ashcroft v. al-Kidd, 563 U.S. 731 (2011).*

158.     Defendants Gorman and Strickland, as private attorneys, cannot claim qualified immunity even when acting under color of state law, as established in *Wyatt v. Cole, 504 U.S. 158 (1992).*

159.     Defendants Gorman and Strickland's actions satisfy the state action requirement under multiple theories established by the Supreme Court.

160.     Beyond the joint participation standard in *Dennis v. Sparks*, their conduct meets the 'entwinement' test articulated in *Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*, 531 U.S. 288 (2001), where the Court held that state action exists when "the State has so far insinuated itself into a position of interdependence with the [private entity]...that it must be recognized as a joint participant in the challenged activity." Here, the entwinement is demonstrated by:

  (1) Defendant Bouldin's provision of the falsified video after Strickland's review on February 19, 2025;

(2) the coordination between all three Defendants evidenced by billing records and synchronized response to Plaintiff's exposure of misconduct; and

(3) the use of state resources and official government channels to execute and conceal their scheme. As established in *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982), private parties who are "willful participant[s] in joint activity with the State or its agents" are state actors for §1983 purposes—a standard clearly met by Defendants' coordinated falsification of official government records.

161.     The ongoing pattern of evidence falsification and intimidation creates irreparable harm that cannot be adequately remedied by monetary damages alone, meeting the standard for injunctive relief in *eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388 (2006)*.

162.     The balance of hardships tips decidedly in Plaintiff's favor, as Defendants would suffer no legitimate hardship from being required to produce unaltered evidence, cease intimidation tactics, and properly disclose Defendant Strickland's representation.

163.     The public interest strongly favors prevention of the falsification of government records, evidence tampering and protection of constitutional rights, further supporting the appropriateness of injunctive relief in this case.

164.     Defendants' conduct demonstrates "reckless or callous disregard for the plaintiff's rights" sufficient to justify punitive damages under *Smith v. Wade, 461 U.S. 30 (1983)*, as evidenced by their coordinated effort to falsify evidence and then silence Plaintiff through intimidation.

165.     Defendant Bouldin, as PPS Custodian, clearly acted under color of state law as established in *West v. Atkins, 487 U.S. 42 (1988)*, while Defendants Gorman and

41

Strickland acted in concert with state officials, meeting the state action requirement under *Dennis v. Sparks, 449 U.S. 24 (1980)*.

166.     Plaintiff's constitutional rights to access courts without official obstruction *(Christopher v. Harbury, 536 U.S. 403 (2002)),* freedom from retaliation for protected speech *(Hartman v. Moore, 547 U.S. 250 (2006)),* due process for fair proceedings *(Armstrong v. Manzo, 380 U.S. 545 (1965)),* and protection against deliberate falsification of evidence *(Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944))* are all clearly established rights violated by Defendants.

167.     The coordinated actions of Defendants meet the conspiracy standard established in *Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970),* as evidenced by billing records, email communications, synchronized responses to Plaintiff's exposure of misconduct, and the creation of Strickland's email at Gorman's firm immediately following exposure of video tampering.

168.     These constitutional violations have caused Plaintiff direct and substantial harm by denying evidence critical to both criminal and civil proceedings, preventing timely preparation of legal strategy due to falsified evidence, forcing Plaintiff to consult with technical experts to prove video tampering, and creating misleading official records that adversely affect both criminal and civil proceedings.

169.     Plaintiff has suffered constitutional harm through deprivation of meaningful access to courts, violation of due process through falsification of official records, denial of equal protection through targeted misconduct, and infringement of First Amendment rights through retaliatory demands to withdraw truthful statements.

170.    Defendants' actions have caused Plaintiff ongoing emotional and psychological harm, including stress and anxiety from intimidation tactics, psychological distress from systematic gaslighting through deliberate evidence manipulation, aggravation of existing trauma from the original verbal attack deleted from the video, and physical manifestations including sleep disturbance and digestive issues triggered by threatening communications.

171.    These harms are compounded by occurring in the context of existing grief.

172.    Plaintiff seeks immediate federal court intervention because the falsification of an official government record under OPRA creates a separate, independent cause of action.

173.    The documented police report confirming violation of N.J.S.A. 2C:28-7 provides objective evidence of criminal misconduct, while technical analysis confirming video manipulation can be independently verified and OPRA billing records provide documentary proof of knowledge and coordination between Defendants.

## PRAYER FOR RELIEF

WHEREFORE, having demonstrated extraordinary circumstances warranting immediate federal intervention, Plaintiff respectfully requests that this Court:

A. Issue a declaratory judgment that Defendants' actions—including the deliberate falsification of official government video records, misrepresentation of legal counsel, and retaliatory conduct—violated Plaintiff's constitutional rights to due process, equal protection, access to courts, and freedom from retaliation under the First, Fifth, and Fourteenth Amendments to the United States Constitution;

B. Issue a declaratory judgment that Defendants Gorman, Strickland, and Bouldin engaged in a conspiracy to interfere with Plaintiff's civil rights in violation of 42 U.S.C. § 1983, as

evidenced by their coordinated efforts to falsify evidence, misrepresent legal representation, and retaliate against Plaintiff using procedural intimidation methods;

C.  Defendant Bouldin is resigning from the Princeton Public School district on June 30, 2025, and Plaintiff request this Court to immediately issue a preservation order to preserve all versions of the video surveillance footage from May 15, 2024, all communications regarding this footage, and all communications between Defendants regarding Plaintiff's legal claims. *Pueblo of Laguna v. United States*, 60 Fed.Cl. 133 (2004), held that preservation orders are appropriate when "the threat of destruction of evidence is real and imminent." Given Defendants' demonstrated willingness to falsify official government records and the risk that the original, unaltered video could be permanently destroyed, such preservation is necessary to maintain the integrity of the judicial process and ensure meaningful relief.

D.  Award compensatory damages for the direct and substantial harm Plaintiff has suffered, including: denial of access to critical evidence, the strain and mental anguish of viewing and documenting the falsified video, emotional distress, psychological harm, and aggravation of existing trauma;

E.  Award punitive damages against all Defendants in an amount sufficient to punish their reckless disregard for Plaintiff's clearly established constitutional rights and to deter similar misconduct by government officials and those acting in concert with them;

F.  Order production of the unaltered, authentic video surveillance footage from May 15, 2024, including both locations of harassment, which captured the harassments that Defendants deliberately removed through unauthorized splicing;

G.  Enjoin Defendants from further retaliation against Plaintiff for exercising her constitutional rights to expose official misconduct;

H.  Order appropriate equitable relief to remedy the artificial legal representation structure, including requiring full disclosure of Defendant Strickland's actual role in this scheme;

I.  Award Plaintiff reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

J.  Grant such other and further relief as this Court deems just and proper under the extraordinary circumstances presented by Defendants' deliberate falsification of official government records and coordinated efforts to obstruct justice.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

I declare under penalty of perjury that the foregoing is true and correct.

Respectfully submitted,

Susan Keith, Plaintiff

Dated:  April 30, 2025

**EXHIBIT A –** PLAINTIFF'S TECHNICAL ANALYSIS OF AN OFFICIAL FALSIFIED

GOVERNMENT RECORD – A SURVEILLANCE VIDEO AT PPS